# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MARTIN E. HUGHES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) NO. 3:19-cv-00924 |
| | ) |
| **TENNESSEE DEPARTMENT OF** | ) JUDGE CAMPBELL |
| **CORRECTION, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

### I. BACKGROUND

On November 26, 2019, the Court dismissed this action as prematurely filed, finding that Plaintiff Martin E. Hughes, a state prisoner proceeding pro se, had filed an application for leave to proceed in forma pauperis and what amounts to a placeholder opening pleading, rather than a complaint sufficient to initiate a civil action. (Doc. No. 5.) The dismissal was "without prejudice to Plaintiff's right to file a proper Section 1983 lawsuit based on the complaint he appears to be in the process of preparing." (*Id.* at 3.)

Six days later, on December 2, 2019, the Court received Plaintiff's motion to amend his complaint. (Doc. No. 6.) Because a final judgment of dismissal has not entered, the Court will consider the motion to amend. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA.") Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In the circumstances presented here, the Court will allow the amendment.

Accordingly, Plaintiff's motion to amend (Doc. No. 6) will be granted, and his amended complaint (Doc. No. 7) becomes the operative complaint in this matter. Plaintiff's subsequently filed motion to reopen (Doc. No. 11) will be denied as moot, and his motions "to file affidavits" (Doc. No. 8) and to "amend declaratory order" (Doc. No. 12) will be granted for the limited purpose of allowing supporting documentation into the record. The Court does not construe these motions as seeking leave to further amend the complaint.

The case is now before the Court for ruling on the IFP application and for initial review of the amended complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## II. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). However, in no event is a prisoner allowed to file a civil action IFP in this Court if he has, on three or more prior occasions, brought an action in a court of the United States that was dismissed on grounds of frivolity, maliciousness, or failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). Plaintiff acknowledges that it was determined in *Hughes v. Tennessee Dep't of Corr.*, No. 1:15-cv-1306-JDT-cgc, Doc. No. 16 at 22–23 (W.D. Tenn. Mar. 13, 2017), that this "three-strikes" rule applies to him.[1] Therefore, he may only proceed as a pauper in this action if he is in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

---

[1] Plaintiff asserts a challenge to those strikes "due to a previous attorney's . . . misconduct while supposedly representing Plaintiff" in criminal cases related to failed civil suits, "therefore causing [three] strikes against Plaintiff." (Doc. No. 7 at 4, 23.) As further explained below, the Court need not further consider this assertion because Plaintiff meets the exception to the three-strikes rule of Section 1915(g).

2

To fall within the statutory exception to the "three-strikes" rule, the danger Plaintiff is facing must be a "real and proximate" threat of serious physical injury that existed at the time the complaint was filed. *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (citing, *e.g.*, *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003)). Under this standard, a plaintiff must "allege[] facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger" when he filed the complaint. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (internal quotation marks and citation omitted).

In his original complaint, Plaintiff alleged that he was "being subjected to very violent daily abusive acts of extortion" by different prison gangs, which was allowed by the Warden and other staff at Trousdale Turner. (Doc. No. 1 at 1.) He alleged that he was being "abused, extorted, stolen from, and kept repeatedly from contact" with his post-conviction attorney. (*Id.*) He alleged that he was "suffering severely because of this facility and its total lack of compliance" with Tennessee law and Department of Correction policies. (*Id.* at 4.) In explaining his attempt to exhaust administrative remedies, Plaintiff alleged that the Warden allows gangs to "basically run the prison" by keeping it understaffed, and by "looking the other way" when gang members engage in misconduct. (*Id.* at 7.) He further alleged that most prison staff will alert gang members "to tell them when we file any things related to their control of power," and that he filed grievances "repeatedly" in this matter. (*Id.*) He therefore alleged that he has been in severe danger since "fil[ing] this suit with content involving 'gangs and staff' improper[] relationships[.]" (*Id.*) In a subsequent letter to the Court, Plaintiff stated that his family has repeatedly been made to pay members of separate gangs $100.00 per month to ensure his safety. (Doc. No. 3 at 1.)

3

The imminent-danger exception is a pleading requirement subject to the ordinary principles of notice pleading, *Vandiver*, 727 F.3d at 585, "concern[ing] only a threshold procedural question" that does not beg "an overly detailed inquiry" into the inmate's allegations. *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010); *Hamby v. Parker*, 307 F. Supp. 3d 822, 825–26 (M.D. Tenn. 2018). However, the law clearly requires an allegation of danger at the time of the inmate's filing. In this case, the Court finds Plaintiff's allegations concerning the threat of harm from prison gangs following his filing of grievances concerning the relationship between prison staff and gang members, combined with his allegation that his family is sending payments to multiple gangs in an effort to keep Plaintiff safe from harm, sufficient to establish that he was in "imminent danger of serious physical injury" at the time his complaint was filed. In addition, Plaintiff has advised in recent submissions that he has been threatened at knifepoint "to not file these issues" (Doc. No. 10 at 1), and to continue paying protection money that his family can no longer afford. (Doc. No. 12 at 1.) Accordingly, the Court will consider Plaintiff's IFP application.

Plaintiff's original IFP application (Doc. No. 2) has been resubmitted in conjunction with his amended complaint. (Doc. No. 13.) Plaintiff originally submitted an affidavit of poverty in accordance with 28 U.S.C. § 1915(a) and a printout of his inmate trust fund account statement from August 14 to September 12, 2019, but asserted that the prison would not cooperate with his efforts to get certification of his six-month account history and average balance. (Doc. No. 2 at 1–3, 6.) His more recent application (Doc. No. 13) replicates his original filing; however, Plaintiff has also attached to his amended complaint a certificate from an inmate account custodian and a full account history. (Doc. No. 7 at 17–21.)

Based on these submissions, it appears that Plaintiff lacks sufficient resources to pay the entire filing fee in advance. Accordingly, Plaintiff's IFP application (Doc. No. 13) will be granted by separate Order.

### III. INITIAL REVIEW

**A. PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

In his amended complaint, Plaintiff states that "[t]his is basically a dual faceted lawsuit," the first facet of which concerns the conditions of his confinement during 2015–16 at Hardeman County Correctional Facility. (Doc. No. 7 at 4.) The second facet of the lawsuit concerns his confinement from July 2017–present at the Trousdale Turner Correctional Center, "where 'gangs' control the entire prison" and Plaintiff is being "extorted, robbed of personal property by both gangs and [Core Civic] staff, [and] retaliated against." (*Id.*)

Plaintiff alleges that since his arrival at Trousdale Turner in 2017, he or his family have been required to make monthly payments to prison gang members to ensure his safety. (*Id.* at 6, 7.) He alleges that Warden Russell Washburn is aware that the prison population is subject to gang

rule, due to the fact that "he does not have enough staff per inmate population to run this prison in the proper fashion or by laws governing its operations." (*Id.* at 7.) Plaintiff alleges that these circumstances and his resulting subjection to the commands of gang members have caused him to be robbed, extorted, beaten, and otherwise deprived of the limited freedom of movement that he has in prison. (*Id.*) He alleges that his suffering is due to Trousdale Turner's lack of compliance with Tennessee law and Department of Correction policies and would be cured by an order enjoining the state to transfer him to a different facility within the Tennessee Department of Correction. (*Id.* at 10–11.) In explaining his attempt to exhaust administrative remedies, Plaintiff alleges that the Warden allows gangs to "basically run the prison" by keeping it understaffed, and by "looking the other way" when gang members engage in misconduct. (*Id.* at 15.) He alleges that the "unspoken rule" at Trousdale Turner allows gangs "to control all other inmates even with violence," in exchange for "certain unspoken favors for 'gang members' by not locking them down, ever, even during TDOC mandatory counts" and by "staff bringing in drugs or contraband for the gangs here[.]" (*Id.*) Plaintiff further alleges that most prison staff will alert gang members "to tell them when we file any things related to their control of power," and that he filed grievances "repeatedly" in this matter. (*Id.*) He therefore claims that he has been in severe danger since "fil[ing] this suit with content involving 'gangs and staff' improper[] relationships[.]" (*Id.*) He requests to have his filings placed under seal for his protection. (*Id.* at 23.)

Plaintiff seeks relief in the form of an injunctive order to transfer him to the Northeast Correctional Complex; unspecified injunctive relief against Core Civic; and compensatory and punitive damages. (*Id.* at 5.)

7

**D. Analysis**

As an initial matter, the Court declines to revisit Plaintiff's requests to place filings under seal and to enjoin the state to transfer him to a different prison, having previously denied these requests by Order entered November 26, 2019. (Doc. No. 5 at 2–3.) Moreover, Plaintiff appears to recognize that the statute of limitations bars the first "facet" of his complaint, concerning events that occurred in 2015–16. (Doc. No. 7 at 26.) And so it does: the statute of limitations for Plaintiff's Section 1983 claim is the one-year period set out in Tenn. Code Ann. § 28-3-104(a)(1)(B). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). Plaintiff suggests that evidence of events which occurred at the Hardeman County Correctional Complex during 2015–16 may be allowed to support his "new claims of the named Defendants of Core Civic Inc. formerly at the time of 2015–16 Corrections Corporation of America." (Doc. No. 7 at 26.) Be that as it may,[2] because any claims arising from Plaintiff's incarceration in the Hardeman County Correctional Complex in 2015–16 accrued more than one year prior to the filing of the complaint, and there is no indication that grievances associated with the underlying events tolled the statute of limitations for an undue length of time, those claims are subject to dismissal as untimely.[3]

---

[2] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (recognizing plaintiff's ability to cite time-barred "prior acts as background evidence in support of a timely claim").

[3] On the last page of the attachment to his amended complaint describing the first facet of his case, Plaintiff argues in passing that "[t]he statute of limitations should not be held against me because I could not refile in any courts due to the PLRA strikes held against me then[.]" (Doc. No. 7-2 at 11.) However, assuming the "imminent danger" exception to the three-strikes law could not have been invoked with respect to Plaintiff's claims from 2015–16, the argument for tolling based on three-striker status is not persuasive. *See James v. Branch*, No. CIV.A. 07-7614, 2009 WL 4723139, at *11 (E.D. La. Dec. 1, 2009) ("James is not entitled to any tolling or forgiveness of the prescriptive period because he was subject to the restrictions of § 1915(g) while he was in prison. This provision did not prevent James from filing a timely suit, it only prohibited his ability to do so as a pauper, without prepayment of the filing fee.").

Plaintiff has attached to his amended complaint various documents that were filed in prior cases of his, most of which are not particularly helpful to the instant case. He has incorporated within his current complaint a petition for declaratory order that he prepared for filing in Trousdale County Chancery Court. (Doc. No. 7 at 9–16.) The allegations of this petition are considered herein to the extent that they pertain to the conditions of his incarceration at Trousdale Turner. The only Defendants that have been named and specifically accused of wrongdoing in the amended complaint are Warden Russell Washburn and his employer, Core Civic. The other Defendants identified in this pleading—Tennessee Department of Correction, Chris Brun, Tony Parker, Medical Staff, Yolanda Pittman, and Director Taylor—are not alleged to have been personally involved in any violation of Plaintiff's constitutional rights at Trousdale Turner and must therefore be dismissed from the action. *Green v. Correct Care Sols.*, No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints."); *see also Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)).

Defendants Core Civic and Warden Washburn are alleged to allow gangs to "basically run [the] prison . . . in all everyday operations," including the scheduling of Plaintiff's opportunities to "eat, shower, [and] come out of [his] cell," by intentionally keeping Trousdale Turner understaffed; by giving gang members favorable treatment with fewer restrictions than other inmates; and, by "looking the other way" when gang members engage in misconduct. (*Id.* at 7, 15.) Other, unnamed individuals at Trousdale Turner are alleged to facilitate and perpetuate this

9

power structure by alerting gang members when unaffiliated inmates file grievances or other complaints related to their control or power. (*Id.* at 15.) To ensure his relative safety in this environment, Plaintiff alleges that his family has been making a monthly payment to gang members in order to protect him. (*Id.* at 6–7.)

Plaintiff claims that these conditions of his confinement are unconstitutional, as his "sentence or punishment for convictions does not allow this treatment." (*Id.* at 7.) Liberally construed, this claim invokes the Eighth Amendment's protection against cruel and unusual punishment. Generally speaking, "[t]he Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). A violation of this protection may be proved upon a showing of prison officials' deliberate indifference to a substantial risk of serious harm. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)); *see also Estelle v. Gamble*, 429 U.S. 97 (1976).

An Eighth Amendment claim thus has both an objective and a subjective component. *Harrison*, 539 F.3d at 518. The objective requirement of a substantial risk of serious harm requires an assessment of "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency"—that is, it "is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To establish the subjective component, a plaintiff must show that the defendant had "a sufficiently culpable state of mind." *Harrison*, 539 F.3d at 518 (internal quotation marks omitted). This state of mind is shown "where 'the official knows of and disregards'" the substantial risk of serious harm. *Id.* (quoting *Farmer*, 511 U.S. at 837). That is, "the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Courts "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

There is no question that Core Civic is a state actor for purposes of Section 1983 because it performs the traditional state function of operating a prison, *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996), and that its liability may only be established upon a showing that a corporate policy caused the alleged harm. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). While Plaintiff has not alleged any official policy of refusing to enforce prison rules and regulations against prison gangs, he has alleged a de facto policy of allowing gang-affiliated inmates to control the daily operations inside Trousdale Turner, in lieu of staffing the prison sufficiently to control its violent population. *See Kuot v. Corr. Corp. of Am.*, No. 1:16-cv-00006, 2016 WL 1118204, at *6, 9 (M.D. Tenn. Mar. 22, 2016) ("In this case, the petitioner has identified *de facto* policies which, he alleges, CCA's corporate officers knew about and encouraged, specifically policies involving the classification of potentially violent inmates, the inaccurate or misleading recording of violent incidents, and the treatment of [gangs] and [gang]-affiliated inmates," directed toward increasing profits and operational efficiency through gang control of housing units and tiers). The execution of Core Civic's staffing policy is alleged to result in Warden Washburn's "knowingly operating this facility understaffed" and allowing for gang control "by not locking them down . . . even during TDOC mandatory counts" and permitting staff to bring drugs or other contraband to gang members. (Doc. No. 1 at 15.) Liberally construing the amended complaint and presuming the truth of its factual allegations, the Court finds them sufficient at this initial screening stage to state a colorable Eighth Amendment claim against Core Civic and against Warden Washburn in his individual capacity, based on their deliberate

indifference to the obvious and substantial risk of serious harm resulting from gang control of an understaffed Trousdale Turner.

## IV. CONCLUSION

In light of the foregoing, Plaintiff's application to proceed IFP will be granted, and the filing fee will be assessed by separate Order. This action will be allowed to proceed against Defendants Washburn and Core Civic. All other named Defendants will be dismissed from the action.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE