**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **MARTIN E. HUGHES,** ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 3:19-cv-00924** |
| **v.** ) | **Judge Campbell / Frensley** |
| ) | |
| **TENNESSEE DEPARTMENT OF** ) | |
| **CORRECTION, et al.,** ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION AND BACKGROUND

This matter is before the Court upon cross-Motions for Summary Judgment.

### A. Defendants' Motion for Summary Judgment

Defendants CoreCivic, Inc. ("CoreCivic") and Russell Washburn ("Washburn") (collectively referred to herein as "Defendants"[1]) filed their Motion for Summary Judgment on July 19, 2021. Docket No. 176. In support of their Motion, Defendants contemporaneously filed a supporting Memorandum of Law (Docket No. 177), a Statement of Undisputed Material Facts (Docket No. 180), and the Declarations with Exhibits of Janel Holley and Russell Washburn (Docket Nos. 178, 178-1, 178-2, 181, 181-1, 181-2, 181-3). As grounds for their Motion, Defendants argue that they are entitled to judgment as a matter of law because: (1) Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff did not suffer physical injury as required under the PLRA; (3) Plaintiff cannot prevail on his Eighth Amendment claim against CoreCivic because the undisputed facts establish that the relevant policies and customs mandate that CoreCivic employees provide inmates

---

[1] CoreCivic and Russell Washburn are the only remaining served Defendants in this action. *See* Docket Sheet; Docket Nos. 28, 30.

1

with adequate safety and security, and the undisputed facts further establish that CoreCivic does not have a policy or custom of allowing gang members to "run" the facility or of allowing the facility to be understaffed; (4) Plaintiff cannot prevail on his Eighth Amendment claim against Defendant Washburn because the undisputed facts establish that Defendant Washburn had no involvement with Plaintiff's requests for protection from other inmates and did not encourage or direct CoreCivic's employees to deny Plaintiff protection from other inmates; and (5) Plaintiff cannot prevail on his Eighth Amendment deliberate indifference claim because the evidence establishes that Defendants were not deliberately indifferent to Plaintiff's safety and security. Docket No. 176.

Plaintiff filed a partial Response[2] to Defendants' Motion, as well as a Response to Defendants' Statement of Undisputed Material Facts,[3] on September 7, 2021. Docket Nos. 191, 192. In his partial Response, Plaintiff argues that Trousdale Turner Correctional Center ("Trousdale") does not offer a functional grievance system because "grievances of any very serious matter against this facility almost always disappear completely or simply falls prey to the total dysfunction of operations of this facility that has been going on since opening in 2016 by being damaged, retaliated against or again lost on appeal through the process here." *Id.* Plaintiff also argues that inmates do not have a constitutional right to a grievance process "anyway." *Id*. With respect to his *respondeat superior* claims, Plaintiff argues that Judge Campbell "basically already ruled on" the issue during his screening. *Id.* Regarding Plaintiff's filed response to Defendants'

---

[2] It appears that, on September 7, 2021, Plaintiff filed only the first page of his Response. *See* Docket No. 191. On September 20, 2021, Plaintiff re-filed what appears to be the entirety of his Response. *See* Docket No. 196.
[3] Although this submission is entitled "Plaintiff's Statement of Undisputed Material Facts," it is Plaintiff's response to Defendants' Statement of Undisputed Material Facts. *See* Docket No. 192. Plaintiff has not filed his own separate Statement of Undisputed Material Facts.

Statement of Undisputed Material Facts, it is important to note that Plaintiff's response is conclusory, fails to appropriately respond, and fails to contain the requisite citations to the record. *See* Docket No. 192.

On September 14, 2021, Defendants filed their Reply to Plaintiff's partial Response. Docket No. 194. In their Reply, Defendants contend that the facts contained in their Statement of Undisputed Material Facts should be deemed undisputed because Plaintiff's "Response" to it is fatally flawed because it does not contain the appropriate citations to the record. *Id.* Defendants argue that Plaintiff's "Response" to their Statement of Undisputed Material Facts fails to comply with Fed. R. Civ. P 56(c) and Local Rule 56.01(c) and note that the Court specifically instructed Plaintiff to comply with Local Rule 56.01 when responding to Defendants' Statement of Undisputed Material Facts. *Id.*, *citing* Docket No. 115 at 3. Defendants argue, therefore, that they are entitled to summary judgment. *Id.*

Defendants further argue that, even if Plaintiff had properly responded to their Statement of Undisputed Material Facts, they would still be entitled to summary judgment because Plaintiff failed to submit any grievances as to his claims that Defendants failed to protect him from the violent acts of other inmates at Trousdale and therefore has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. *Id.* Defendants additionally argue that CoreCivic does not have a policy or custom of failing to provide inmates at Trousdale with adequate safety and security and note that Plaintiff does not direct the Court to any evidence demonstrating any such policy or custom. *Id.* Accordingly, Defendants argue that they are entitled to summary judgment. *Id.*

Thereafter, on September 20, 2021, Plaintiff re-filed his complete Response, as well as a duplicate (and identical) Response to Defendants' Statement of Undisputed Material Facts. Docket

Nos. 196, 197. In this Response, Plaintiff reiterates the arguments set forth above, and further argues that, contrary to Defendants' assertion that he did not name a "policy," the "Declaratory order attached to this suit … clearly has made ALL policies, Laws, and violations thereof known since the very beginning of this suit." Docket No. 196. Plaintiff contends that Defendants are "trying to cover up" their corrupt staff looking past "Gang Rule" at Trousdale and he asserts that he would be able to prove it "if not for the very convenient 'Loss of Film Footage.'" *Id.*

Plaintiff additionally argues that "Supervisory Liability cannot be relied on as a Defense by Mr. Washburn" because, as the warden, he has the ultimate power and authority, and Plaintiff has "Documentary evidence" to show that Defendant Washburn knew that Trousdale was dangerous but did not make the necessary changes. *Id.* Plaintiff additionally argues that his claims of having his "teeth beat out of his mouth, being beaten with mop handles along with very serious condition's [*sic*] filed under SEAL" shows that he suffered the required physical injury. *Id.* Finally, Plaintiff contends that the issues filed under Seal establish not only deliberate indifference, but "could provide criminal prosecution" as well. *Id.*

On October 14, 2021, Plaintiff untimely-filed a third Response. Docket No. 201.[4]

A few days later, on October 18, 2021, Plaintiff untimely-filed a Sur-Reply. Docket No. 203.[5]

The next day, on October 19, 2021, Plaintiff untimely-filed his fourth Response. Docket

---

[4] Defendants filed their Motion for Summary Judgment on July 19, 2021. Docket No. 176. Pursuant to the Rules, Plaintiff has 21 days in which to file his Response. Plaintiff filed a Motion for an Extension of Time in which to file his Response, which the undersigned granted. *See* Docket Nos. 182, 188. Plaintiff had until September 15, 2021 in which to file his Response. As noted above, Plaintiff filed a partial Response on September 14, 2021, and he re-filed his complete Response on September 20, 2021. Plaintiff's third and fourth Responses are untimely and filed without Leave of Court; accordingly, the undersigned will not consider them.

[5] As discussed, Defendants filed their Reply on September 14, 2021. Docket No. 194. Because Plaintiff's Sur-Reply is untimely and filed without Leave of Court, it will not be considered.

4

No. 205.[6]

**B.      Plaintiff's Motion for Summary Judgment**

On November 4, 2021, nearly four months after the Court's dispositive motion deadline had passed, Plaintiff filed his Motion for Summary Judgment. Docket No. 208.[7] Although Plaintiff filed his Motion, he did not file a supporting Memorandum of Law or Statement of Undisputed Material Facts.[8] In his Motion, Plaintiff reiterates his contentions that he has been repeatedly assaulted, extorted, and robbed by prison gang members, that gang members "run" the facility, that the facility is understaffed, and that there is a "widespread custom of policy abuse by CoreCivic." *Id.* Plaintiff argues, "understaffing coupled with corruption of most staff involved make this facility severely unsafe and unsecured to the point it violates the 8th Amendment of the US Constitution." *Id.* Plaintiff continues, "It is common knowledge these violations did occur from 2016 – present." *Id.*

Defendants have filed a Response to Plaintiff's Motion. Docket No. 211. Defendants' argue that Plaintiff's Motion for Summary Judgment should be denied because: (1) it is untimely-filed, as the deadline for filing dispositive motions in this action was July 19, 2021, and Plaintiff did not file his Motion for Summary Judgment until November 4, 2021;[9] (2) Plaintiff's Motion fails to comply with both the Local and Federal Rules, as Plaintiff neither cited to evidence in the record

---

[6] As noted, because Plaintiff's fourth Response is untimely and filed without Leave of Court, the undersigned will not consider it.

[7] The Case Management Order entered by this Court on November 20, 2020 sets the dispositive motion deadline as July 19, 2021. Docket No. 115.

[8] Days later, on November 8, 2021, Plaintiff submitted a letter and a "Final Statement on Issues Under Seal." Docket Nos. 209, 210. Thereafter, on November 18, 2021, Plaintiff filed a "Final Argument of Facts and Theory of Liability." Docket No. 212. Neither of these submissions, however, constitutes an accompanying Memorandum of Law or the requisite Statement of Undisputed Material Facts.

[9] While Plaintiff sought an extension of the discovery deadline, that Motion was denied. *See* Docket Nos. 174, 186.

5

nor submitted the requisite Statement of Undisputed Material Facts; (3) the only admissible evidence before the Court establishes that Defendants did not violate Plaintiff's Eighth Amendment rights, such that they are entitled to a judgment as a matter of law; and (4) Plaintiff did not exhaust his administrative remedies prior to filing suit, as required under the PLRA. *Id.*

C.     **Plaintiff's Claims Remaining After Frivolity Review**

While Plaintiff's initial Complaint contained numerous claims against a variety of individuals, through its initial screening, this Court dismissed the majority of Plaintiff's claims, allowing only Plaintiff's Eighth Amendment deliberate indifference to safety claims to proceed against CoreCivic and Defendant Washburn in his individual capacity, based upon the allegations that they failed to protect Plaintiff from the violent acts of other Trousdale inmates. Docket No. 15.

In his Amended Complaint, Plaintiff argues that Defendants violated his Eighth Amendment rights by filing to protect him from repeated assaults, robberies, and extortion demands by prison gang members. Docket No. 7. Plaintiff avers that Defendants allow gang members to "run" the prison by keeping it understaffed and looking the other way when gang members engage in misconduct. *Id.* Plaintiff avers that, as a result of the assaults, robberies, and extortion demands, he has experienced property loss, stress, and "small injuries" that have gone "untreated by the medical staff." *Id.* Plaintiff notes that his family has been making monthly payments so that the prison gangs will leave him alone and not harm him. *Id.* Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. *Id.*

For the reasons set forth below, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies, as required under the PLRA. The undersigned further finds that there are no genuine issues of material fact and that Defendants are entitled to a judgment as a matter of

law.  Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 176) be **GRANTED**, that Plaintiff's Motion for Summary Judgment (Docket No. 208) be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**.

## II. UNDISPUTED FACTS[10]

### A.    Declaration of Janel Holley

Janel Holley is employed by CoreCivic, as the Grievance Coordinator at the Trousdale Turner Correctional Center ("Trousdale"). Docket No. 178 ("Holley Dec."), ¶ 1.

CoreCivic's administrative grievance system enables inmates at Trousdale to seek redress for issues relating to the conditions of their confinement. *Id.*, ¶ 3.

Policy 501.01, Inmate Grievance Procedures, sets forth the following process for a standard inmate grievance at Trousdale:

First Level: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.

Second Level: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.

Third Level: An inmate may appeal the Level Two response within five calendar

---

[10] Unless otherwise noted, the following Facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

7

days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

*Id.*, ¶ 4.

Plaintiff pursued grievances dated February 10, 2018, October 30, 2018, and April 3, 2019, through all three levels of the grievance procedure at Trousdale and before he filed the Complaint. *Id.*, ¶ 5. Plaintiff did not, however, complain in any of these grievances that Defendant Washburn failed to protect him from other inmates at the facility. *Id.*, ¶ 6. In fact, Plaintiff did not complain in any grievance he filed at Trousdale before initiating this lawsuit that any CoreCivic staff failed to protect him from other inmates at the facility. *Id.*, ¶ 7.

Plaintiff further did not complain in any grievance he filed at Trousdale before initiating this lawsuit that prison staff members allow gangs to control the facility, nor did he complain about any safety or security issues purportedly caused by understaffing. *Id.*, ¶ 8.

## B.    Declaration of Russell Washburn

Russell Washburn is an employee of CoreCivic, who, at all times relevant to the instant action, served as the warden at Trousdale. Docket No. 181 ("Washburn Dec."), ¶ 1.

CoreCivic contracts with the Tennessee Department of Correction ("TDOC") to operate Trousdale. *Id.*, ¶ 3.

Relevant policies and customs at Trousdale are designed and intended to ensure that all inmates receive protection from threats by other inmates. *Id.*, ¶ 4. Policies 14-4, Inmate/Resident Rights; 9-1, Use of Force & Restraints; and 404.09, Protective Services are submitted. *Id.*, ¶¶ 5, 6, 7; *citing* Docket Nos. 181-1. 181-2, 181-3. Customs relevant to Plaintiff's claims in this litigation similarly mandate that inmates at Trousdale receive protection from threats by other inmates. *Id.*,

8

¶ 8.

CoreCivic does not have a policy or custom of allowing gang members to "run" the facility." *Id.*, ¶ 9.

During Defendant Washburn's time as warden of Trousdale, all critical security positions at Trousdale were fully staffed, and security personnel are trained to identify inmates with needs and to provide those inmates with assistance as required. *Id.*, ¶ 10.

There were occasional lockdowns at Trousdale to help ensure the safety and security of the inmates incarcerated therein. *Id.*, ¶ 11.

While employed as the warden at Trousdale, Defendant Washburn did not ignore Plaintiff's alleged requests for protection, was not aware of any threats to Plaintiff's safety with respect to his allegations that he was threatened by other inmates at Trousdale, did not perceive or have reason to perceive that any other Trousdale inmates presented a danger to Plaintiff, did not disregard any perceived danger, and neither instructed nor encouraged CoreCivic employees to refuse to provide Plaintiff with protection from other inmates. *Id.*, ¶ 12.

### C.    Other Undisputed Facts

When CoreCivic employees receive information which indicates that an inmate may be in danger from other inmates, an immediate inquiry will be made concerning the facts of the situation to determine whether the alleged threats are substantiated and whether immediate protection is needed.  Docket No. 180, *citing* Docket No. 118, Declaration of Vincent Vantell ("Vantell Dec."), ¶ 9.

CoreCivic requires an investigation into the information received because of the voluminous number of instances of inmates reporting threats from other inmates, which often are unsubstantiated. *Id.*, ¶ 10.

9

CoreCivic policies require that employees fully and immediately document all information received regarding threats to inmates incarcerated at Trousdale. *Id.,* ¶ 11. Plaintiff's records do not contain documentation of any threats made by other inmates at Trousdale as it relates to the assaults he alleges took place. *Id.*, ¶ 12.

### III. LAW AND ANALYSIS

#### A.     Local Rules 56.01(c) and (g)

Local Rules 56.01(c) and (g) state, in pertinent part:

> **c.  Response to Statement of Facts.**  Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g.  Failure to Respond.**  Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Defendants filed their Statement of Undisputed Material Facts on July 19, 2021. Docket No. 180. Two-and-a-half months later, on September 7, 2021, Plaintiff untimely-submitted a filing entitled "Plaintiff's Statement of Disputed Material Facts," which is neither a response to Defendants' Statement of Undisputed Facts, nor Plaintiff's own. Docket No. 192. Not only is Plaintiff's submission untimely, it fails to comply with either the Federal or Local Rules, as it fails to respond noting whether each fact is disputed or undisputed and it is devoid of the requisite citations to the record. *See id.*

Plaintiff's failure to properly respond indicates "that the asserted facts are not disputed for the purposes of summary judgment."  Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a

10

matter of law.

**B.    Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to properly respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998).  As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded.  The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ...  The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim.  *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

11

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F. 3d 533, 537-38 (6th Cir. 1999).

Additionally, Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c)    Procedures.**

**(1)    *Supporting Factual Positions*.**  A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**C.    42 U.S.C. § 1983**

**1.    Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. Docket No. 7. Section 1983 provides, in part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

### 2. Eighth Amendment

#### a. Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, a prisoner must satisfy a two-prong test:

(1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### b.    *Respondeat Superior*

### i.    **CoreCivic**

As a preliminary matter, because CoreCivic contracts with the Tennessee Department of Correction to operate Trousdale, it is amenable to suit under § 1983.

*Respondeat superior* does not form a basis for the imposition of liability under § 1983; rather, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he/she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

### ii.    **Supervisory Defendants in their Individual Capacity**

As discussed, ¶ 1983 liability cannot be predicated upon the theory of *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also, Monell*, 436 U.S. at 694; *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

In order for a supervisory defendant to be held liable in his or her individual capacity, a plaintiff must demonstrate that the specific defendant personally condoned, encouraged, or participated in the conduct that allegedly violated the plaintiff's rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), *citing Hays v. Jefferson County,* 668 F. 2d 869, 872-74 (6th Cir. 1982) (The supervisor

14

must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

In order to defeat a defendant's properly supported Motion for Summary Judgment, the plaintiff must present affirmative evidence that *each* defendant violated his rights; conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

### D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U. S. C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U. S. C. §1997e(a) (emphasis original).

Exhaustion is required even if the prisoner subjectively believes the remedy is not available, even if the state cannot grant the particular relief requested, and even if the prisoner believes the procedure to be ineffectual or futile. *Napier v. Laurel County*, 636 F.3d 218, 222 (6th

Cir. 2011). Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of §1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

The PLRA requires "proper exhaustion," meaning that a prisoner's grievance must comply with the procedural rules and requirements of the prison or prison system in order for the exhaustion requirement to be met. *Woodford v. Ngo,* 548 U.S. 81, 93 (2006). Prisoners must complete the administrative review process in accordance with the applicable procedural rules set by the prison grievance process. *Jones v. Bock,* 549 U.S. 199, 218 (2007). Pursuant to the PLRA, a prisoner's unexhausted claims cannot be brought into court. *Id.* at 211.

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether the plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. §1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U. S. C. §1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, the plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, the plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of §1997e(a). The *Freeman* Court stated in part as follows:

16

The phrase "action . . . with respect to prison condition" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U. S. C. §3626(g)(2), which was amended as part of the same legislation as §1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places.

. . .

Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 986 (2002). As the *Porter* Court stated:

Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

. . .

For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S. Ct. at 988, 992 (citations omitted, emphasis added).

17

### E.    The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in §1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that CoreCivic has a grievance system and that CoreCivic's administrative grievance system enables inmates at Trousdale to seek redress for issues relating to the conditions of their confinement. Holley Dec., ¶3. Policy 501.01, Inmate Grievance Procedures, sets forth the following process for a standard inmate grievance at Trousdale:

> First Level: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.

> Second Level: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.

> Third Level: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

*Id.*, ¶4.

Although Plaintiff, in his Response, argues that Trousdale does not offer a functional grievance system because "grievances of any very serious matter against this facility almost always disappear completely or simply falls prey to the total dysfunction of operations of this facility," the undisputed facts establish that not only did Plaintiff file multiple grievances, but he actually pursued his grievances dated February 10, 2018, October 30, 2018, and April 3, 2019, through all three levels of the grievance procedure at Trousdale and before he filed the Complaint. *Id.*, ¶5. Although Plaintiff pursued these grievances through to exhaustion, it is undisputed that Plaintiff did not, however, complain in any of these grievances that Defendant Washburn failed to protect him from other inmates at the facility. *Id.*, ¶6. It is further undisputed that, Plaintiff did not complain in any grievance he filed at Trousdale before initiating this lawsuit that any CoreCivic staff failed to protect him from other inmates at the facility. *Id.*, ¶7. Moreover, it is undisputed that Plaintiff did not complain in any grievance he filed at Trousdale before initiating this lawsuit that prison staff members allow gangs to control the facility, nor did he complain about any safety or security issues purportedly caused by understaffing. *Id.*, ¶8. Because it is undisputed that Plaintiff did not grieve the allegations which form the basis of his lawsuit, Plaintiff has failed to exhaust his administrative remedies, as required under the PLRA. Accordingly, Defendants are entitled to judgment as a matter of law and their Motion should be granted.

Even if Plaintiff had exhausted his administrative remedies, however, the undisputed facts establish that Defendants did not violate Plaintiff's Eighth Amendment rights. It is undisputed that the relevant policies and customs at Trousdale are designed and intended to ensure that all inmates receive protection from threats by other inmates, and that customs relevant to Plaintiff's claims in this litigation similarly mandate that inmates at Trousdale receive protection from threats by other inmates. Washburn Dec., ¶4. Policies 14-4, Inmate/Resident Rights; 9-1, Use of Force &

19

Restraints; and 404.09, Protective Services. *Id.*, ¶¶5, 6, 7; 8 *citing* Docket Nos. 181-1. 181-2, 181-3.

It is further undisputed that CoreCivic does not have a policy or custom of allowing gang members to "run" the facility," and that, during Defendant Washburn's time as warden of Trousdale, all critical security positions at Trousdale were fully staffed, and security personnel are trained to identify inmates with needs and to provide those inmates with assistance as required. *Id.*, ¶¶9, 10.

Additionally, it is undisputed that, when CoreCivic employees receive information which indicates that an inmate may be in danger from other inmates, an immediate inquiry will be made concerning the facts of the situation to determine whether the alleged threats are substantiated and whether immediate protection is needed, and that CoreCivic policies require that employees fully and immediately document all information received regarding threats to inmates incarcerated at Trousdale. Docket No. 180, *citing* Docket No. 118, Declaration of Vincent Vantell ("Vantell Dec."), ¶¶9, 11. It is undisputed that Plaintiff's records do not contain documentation of any threats made by other inmates at Trousdale as it relates to the assaults he alleges took place. *Id.*, ¶12.

Finally, it is undisputed that, while employed as the warden at Trousdale, Defendant Washburn did not ignore Plaintiff's alleged requests for protection, was not aware of any threats to Plaintiff's safety with respect to his allegations that he was threatened by other inmates at Trousdale, did not perceive or have reason to perceive that any other Trousdale inmates presented a danger to Plaintiff, did not disregard any perceived danger, and neither instructed nor encouraged CoreCivic employees to refuse to provide Plaintiff with protection from other inmates. Washburn Dec., ¶12.

In light of the foregoing, it is undisputed that Defendants did not violate Plaintiff's Eighth

Amendment rights and Defendants are entitled to a judgment as a matter of law on those claims.

## IV.    CONCLUSION

For the reasons discussed above, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies, as required under the PLRA.  The undersigned further finds that there are no genuine issues of material fact and that Defendants are entitled to a judgment as a matter of law.  Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 176) be **GRANTED**, that Plaintiff's Motion for Summary Judgment (Docket No. 208) be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**. The undersigned further recommends that Plaintiff's claims as to the remaining Defendants named in this action be **DISMISSED WITHOUT PREJUDICE** based on the Plaintiff's failure to identify numerous individuals or to obtain service for any of them notwithstanding having filed his Amended Complaint on March 19, 2020. Docket No. 38.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**